AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED
Nov 12, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

United States of America
v.
Jorge Guzman Acevado

*Defendant(s)*

Case No. **1:26-mj-00140-FJS**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 11, 2026 in the county of Fresno in the Eastern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) and (b) | Assault on a Federal Officer Inflicting Bodily Injury<br><br>Maximum Penalties:<br>20 years of imprisionment;<br>$250,000 fine;<br>Both fine and imprisionment;<br>3 years of a term of supervised release; and<br>$100 special assessment |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

Lillie Thibodeaux
*Complainant's signature*

Lillie Thibodeaux, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: November 12, 2026

*Judge's signature*

City and state: Fresno, California

Hon. Frank J. Singer, US Magistrate Judge
*Printed name and title*

Print | Save As... | Attach | Reset

ERIC GRANT
United States Attorney
ARELIS M. CLEMENTE
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JORGE GUZMAN ACEVADO,<br>Defendant. | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT |

I, Lillie Thibodeaux, having been duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Jorge Guzman Acevado ("**GUZMAN**") with violations of 18 U.S.C. § 111(a)(1) and (b), Assault on a Federal Officer Inflicting Bodily Injury. As set forth below, there is probable cause to believe that on or about November 11, 2026, in the Eastern District of California, GUZMAN physically assaulted a Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Deportation Officer (DO) by throwing hot coffee on the officer's face and kicking the same officer in the groin while that officer was engaged in and on account of the performance of the officer's official duties.

## II. AFFIANT BACKGROUND

2. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), within the United States Department of Homeland Security, and have been so employed since December of 2023. I am currently assigned to investigate organized crime to include drug trafficking, weapons trafficking,  as a member of the Homeland Security Task Force in Fresno AOR.

3. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law.

4. Prior to my employment with HSI, I completed my Bachelor of Art degree in Criminal Justice and a Minor in Arabic Studies from the University of Louisiana at Lafayette.

5. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I have assisted in the execution of search warrants for child sexual abuse material, controlled substances and/or related paraphernalia, and other evidence of violations of federal statutes.  I have participated in investigations targeting individuals possessing child sexual abuse material, as well as individuals and organizations trafficking controlled substances as defined in Title 21, United States Code, § 802(6).

6. I have received over 960 hours of training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, relating to the investigations of narcotics trafficking, narcotics smuggling and money laundering among many other types of criminal investigations. Training included mock investigations of individuals who derived income from the distribution and sale of controlled substances. Through my training, experience, and interaction with other experienced Special Agents, Task Force Officers, and other drug investigators, I have become familiar with the methods employed by drug traffickers to

smuggle, safeguard, store, transport, and distribute drugs, and to collect and conceal drug-related proceeds, and to communicate with other participants to accomplish such objectives.

7. As a result of my participation in these and other activities, I have gained particular knowledge in the use and utility of undercover agents, confidential informants, physical surveillance, wire surveillance, electronic surveillance, oral surveillance, consensual recordings, investigative interviews, mail covers, trash searches, installation and monitoring of GPS tracking devices, pole-mounted cameras, and the execution of federal and state search and arrest warrants. In addition to using the aforementioned investigative techniques, during these investigations, I also have analyzed information from traditional record sources, such as telephone toll and subscriber records, as well as non-traditional record sources, such as the informal ledgers routinely maintained by drug traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources. I have also gained expertise in the identification and collection of drug and non-drug evidence, and the analysis and interpretation of recorded conversations. Additionally, I have spoken extensively with other experienced law enforcement officers and cooperating individuals about the packaging and preparation of drugs, methods of operation, and security measures employed by drug traffickers.

8. I have personally participated in the investigation discussed in this Affidavit as the lead case agent, and I am familiar with the facts and circumstances of the investigation. My role in this investigation, combined with my training and experience, information I have learned from other HSI agents and other law enforcement agencies, my discussions with witnesses involved in the investigation, and my review of records and reports relating to the investigation form the basis for the opinions I set forth in this Affidavit. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was

provided by another HSI agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

9. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

10. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## III. APPLICABLE STATUTE

11. **Assault on a Federal Officer**. Under Title 18, United States Code, Section 111(a)(1) and (b), it is unlawful to forcibly assault any officer or employee of the United States while the officer or employee is engaged in or on account of the performance of the officer's or employee's official duties. Forceable assault includes a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm. The maximum penalty for this offense is enhanced to 20 years of imprisonment and a fine of $250,000, where there is infliction of bodily injury.

## IV. STATEMENT OF PROBABLE CAUSE

12. On November 11, 2026, at approximately 5:00 a.m., Fresno Enforcement and Removal Operations ("ERO") officers with the Department of Homeland Security ("DHS") arrived to the area of 1240 N Cystal Street, of Fresno, California, to conduct a targeted enforcement for a subject.

13. At approximately 6:54 a.m., officers observed a Hispanic male, with strong resemblance to the target subject by way of forehead size, nose shape, and hair color, walking westbound on W. Hedges Avenue, the street perpendicular to the targeted subject's address. The Hispanic male was observed holding a disposable cup in his hand. ERO officers determined the Hispanic male, later identified as GUZMAN, bore significant resemblance to the target subject and attempted to conduct a consensual interview. ERO Officer One, wearing law enforcement markings to include a "POLICE" patch across the officer's chest, an "ERO" patch on the officer's vest, and agency badge, approached GUZMAN and asked for his name. GUZMAN did not answer and proceeded to stare at ERO Officer One. ERO Officer One. inquired if GUZMAN's name was "Rene", the target individual, and GUZMAN subsequently threw the disposable cup at ERO Officer One's face. The disposable cup was filled with liquid identified as hot coffee by way of smell and the steam observed rising from the hot liquid as it flew through the air and made contact with the lower half of ERO Officer One's face, jacket sleeves, and tactical vest. ERO Officer One later stated that a burning sensation was immediately felt as the hot liquid made contact.

14. ERO officers are assigned Body Worn Cameras ("BWC") in accordance with DHS policy. During this time, the ERO Officer One's BWCs were not activated.

15. ERO Officer One, with the assistance of other officers began to subdue GUZMAN pursuant to the assault on ERO Officer One due to officer safety concerns. The officers attempted to restrain GUZMAN while GUZMAN actively resisted officers by locking his

elbows to prevent officers from placing GUZMAN's hands behind his back and attempting to maneuver his body from lying on his stomach to his back. Additional assistance was requested due to GUZMAN's restraint.

16. At this time, a third ERO officer activated their BWC, simultaneously activating another ERO officer that was on scene actively restraining GUZMAN. Moments later, he arrived at the scene to assist the two ERO officers on the ground attempting to place GUZMAN in handcuffs. The ERO officers observed GUZMAN attempting to prevent ERO officers from placing the second handcuff around GUZMAN's wrist by holding onto the cuff.

17. ERO officers successfully placed the handcuffs on GUZMAN and lifted GUZMAN to his feet. One ERO officer stated the approximate time taken to place GUZMAN in handcuffs lasted approximately seven minutes. The BWC footage(s) recorded approximately six minutes and nineteen seconds (6:19) of the incident, but ERO officers stated the incident was occurring for approximately a minute prior to BWC(s) were activated and assistance was requested.

18. GUZMAN was restrained by two ERO officers while the third ERO officer, ERO Officer One, facing GUZMAN began to open the rear passenger door of the transport vehicle. GUZMAN was observed by ERO officers and BWCs lunging his right leg forward in a kicking motion, hitting ERO Officer One's groin.

19. ERO Officer One was then observed on BWC bent over at the waist in visible pain and distress. GUZMAN was subsequently placed in the rear passenger seat of the transport vehicle.

20. Once GUZMAN was safely placed in the back seat of the transport vehicle, the ERO officers move around the transport vehicle and BWC footage captures the disposable cup filled with hot coffee that was previously thrown at ERO Officer One lying on the sidewalk. Surrounding the disposable cup were visible wet marks located on the sidewalk and street.

Image 1 below is a snipped image from BWC footage depicting the disposable cup of hot coffee and surrounding wet marks located on the sidewalk and street from where the coffee was thrown at ERO Officer One by GUZMAN.

**Image 1**




21. Following the arrest, ERO Officer One voiced discomfort in his groin region and were observed to have knee scrapes and torn clothing. ERO Officer One declined medical attention. I personally observed the injuries sustained by the ERO officer. Images 5 and 6 below are photos provided by ERO Officer One of those injuries.

**Image 2**



**Image 3**



22. GUZMAN was subsequently transported to the ERO sub-office located in Fresno, California, where he was fingerprinted.[1]

## V. CONCLUSION

23. Based on the information above, there is probable cause to believe that on or about November 11, 2026, GUZMAN violated 18. U.S.C. § 111(a)(1) and (b). Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for his arrest.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief:

*/s/ Lillie Thibodeaux*
LILLIE THIBODEAUX
Special Agent – HSI

Affidavit submitted by email and pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim P. 4(d) and 4.1 before on:

HON. FRANK J. SINGER
U.S. MAGISTRATE JUDGE

Reviewed as to form:
*/s Arelis M. Clemente*
Arelis M. Clemente
Assistant U.S. Attorney

[1] A review of his criminal record showed that on December 3, 2018, GUZMAN was charged with Penal Code § 288(a): Lewd or Lascivious Act- Under 14 Years in the Superior Court of the State of California County of Fresno. Records from that criminal proceeding show that on December 3, 2022, a court-appointed medical doctor concluded that GUZMAN was suffering from a psychiatric disorder, best classified as a developmental disability, and was not competent to stand trial.